Filed 10/23/25  P. v. Farago CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VERONIKA SUZANNE FARAGO,<br><br>Defendant and Appellant. | C100737<br><br>(Super. Ct. No. SCCRCRF2018768) |

The trial court denied defendant Veronika Suzanne Farago's petition for mental health diversion under Penal Code section 1001.36.[1]  The court found her eligible, but not suitable, for diversion, reasoning that she may have a history of not taking her medication and that her desire to move to a different county could make it difficult to monitor her medication compliance.  Farago subsequently pleaded no contest to one count of arson with the use of an accelerant and was sentenced to five years in prison.

On appeal, Farago contends that the trial court abused its discretion in denying her petition for mental health diversion.  We agree that the court applied an incorrect legal

---

[1]  Undesignated statutory references are to the Penal Code.

1

standard in ruling on her petition.  And we disagree with the People that we can imply from the court's ruling the missing findings required by the statute.  We thus conditionally vacate Farago's no contest plea, conditionally reverse the judgment, and remand the matter for further proceedings consistent with section 1001.36.

BACKGROUND

I.

According to the police report to which Farago stipulated as the factual basis for her plea, Farago was living in Oregon and showed up at an acquaintance's home in Siskiyou County on May 17, 2018.  Later that same day, the California Highway Patrol contacted Farago while she was with her minor son in a parked car in the center divider of Interstate 5, holding a sign that said "help."  When the officer approached, Farago acted strangely, believing numerous people were out to "get her."  She grabbed a knife with an open blade.  The officer ordered Farago to put the knife down.  She complied but then sped off in her car.  She was later detained and taken to Siskiyou County Behavioral Health Services (Behavioral Health) on a mental health hold under Welfare and Institutions Code section 5150, and her son was taken into protective custody.

After being evaluated by Behavioral Health, Farago was released and taken to a motel for the night in Yreka.  Farago did not like the motel and asked the officer to take her to her acquaintance's house instead.  The officer took Farago to the home, but the acquaintance told the officer that Farago could not stay.  The officer then took Farago back to Yreka to a different hotel.

Two days later, on May 19, 2018, Farago walked several miles back to the acquaintance's house.  When she arrived, no one was home.  She let herself inside, drank some juice, and smoked marijuana.  Using butane and gasoline that she found outside, she lit the house on fire, completely destroying it.  She then grabbed a helmet and a machete and left.  As she walked away from the house toward a hillside wearing the helmet, she lit several vegetation fires because she believed there was "trash and disease"

2

in the area.  She found a piece of glass and used it to cut her wrists because she wanted to die on the mountain.  When officers arrived, she refused to put the machete down and began swinging it.  She eventually dropped the machete and was detained after trying to punch one of the officers.  She was transported to the hospital.  She told the arresting officer that she had to burn the house down because she needed to "clean the energy out" after finding child pornography inside.  Based on Farago's statements, the officer believed she was having a mental health crisis.

II.

Farago was charged with arson of an inhabited structure or property (§ 451, subd. (b)) with the use of an accelerant (§ 451.1, subd. (a)(5)), arson of a structure or forest (§ 451, subd. (c)), first degree residential burglary (§ 459), and exhibiting a deadly weapon to a peace officer with the intent to resist arrest (§ 417.8).

In June 2018, defense counsel declared a doubt as to Farago's competency.  The trial court suspended criminal proceedings and appointed two doctors to evaluate her.

Dr. Kent Caruso examined Farago in July 2018 and found her incompetent to stand trial.  He believed that she would be unable to communicate with her counsel in a rational manner because he found her to be psychotic and not in touch with reality.  According to his report, jail mental health staff had tentatively diagnosed Farago as suffering from a delusional disorder, paranoid type, psychotic disorder (not otherwise specified), or bipolar disorder, and he agreed with this tentative assessment.  At that point, Farago had not yet been prescribed any psychoactive medications, having told the staff that she did not need any type of psychoactive medication because there was nothing wrong with her.  Dr. Caruso was not sure at that time whether Farago would cooperate in taking psychoactive medication if prescribed.

Dr. Ray Carlson examined Farago a few days later and found her to be competent.  According to Dr. Carlson, Farago did not experience either visual or auditory hallucinations during the evaluation, but showed mild signs of depression based on the

3

current charges and the loss of her son when he was taken into protective custody. She denied having a history of mental health issues and claimed never to have been prescribed psychiatric medications. Farago agreed that she could have been in a delusional state during the arson incident.

Given the conflicting opinions, the trial court appointed a third doctor to examine Farago. Dr. J. Reid McKellar found Farago to be competent. He noted that Farago had been fairly unstable when first incarcerated, but she had since been compliant with her medication regimen, her moods had stabilized, her jail behaviors were appropriate, and she had not exhibited any signs of psychosis or reality disturbance. Initially, Farago was treated with lithium due to the suspected presence of bipolar disorder. She was currently being treated with an antidepressant and medication designed to address post-traumatic stress disorder.

After considering the reports, the trial court found Farago competent to stand trial and reinstated criminal proceedings in August 2018. Farago was subsequently released on bail.

In October 2018, Farago began attending outpatient mental health treatment with Romina King, a licensed marriage and family therapist in Oregon. According to King, Farago regularly attended her appointments, was punctual and highly motivated for treatment, and "fully participate[d] during her sessions."

At a pretrial conference in February 2019, defense counsel informed the trial court that Farago had "made some inroads in terms of receiving some comprehensive mental health services in Jackson County, [Oregon]," which could facilitate settlement discussions.

In July 2019, counsel arranged for Dr. Jeff Gould to conduct a psychiatric evaluation of Farago. In Dr. Gould's opinion, Farago presented with symptoms consistent with bipolar disorder and cannabis use disorder. He opined that, at the time of the offenses, she was suffering from severe manic and psychotic symptoms that directly

4

impacted her behavior. He did not have enough information to diagnose her with post-traumatic stress disorder (although she reported symptoms consistent with that condition), and further data would be necessary to rule out that diagnosis. He noted her report that, while in custody, she began taking mood-stabilizing medication, followed by antidepressant medication and medication prescribed for post-traumatic stress disorder.[2] He further observed that, while in the community following her incarceration, she enrolled in psychotherapy treatment and continued to take antidepressant medications and anti-anxiety medication. Dr. Gould stated that Farago's psychotic symptoms appeared to have resolved with the use of the mood-stabilizing medication, without signs of ongoing psychotic or cognitive deficits that were generally characteristic of a chronic psychotic disorder.

Dr. Gould outlined several treatment recommendations to address Farago's psychiatric condition and to reduce the risk that she would behave in a manner similar to the events preceding her arrest. He recommended "[m]andatory compliance with mood stabilizing or antipsychotic psychiatric medication and monitoring by a psychiatrist," as well as monitoring compliance through consistent evaluations by a psychiatrist and periodic laboratory confirmation. To reduce the risk of inducing a future manic episode from cannabis use, Dr. Gould also recommended mandatory compliance with a substance-recovery treatment program of 6 to 12 months with frequent random and observed urine toxicology testing. He additionally recommended psychotherapy treatment and group therapy through a substance-recovery treatment program and participation in an outpatient mental health clinic or other therapeutic environment.

---

[2] Because the record contains sufficient information about Farago's medications, we deny as unnecessary her request that we judicially notice a governmental website with information about various drugs.

## III.

In November 2019, Dr. Anthony Scheving of Behavioral Health evaluated Farago to determine whether she qualified for a mental health diversion program. In reaching his conclusions, Dr. Scheving considered the three 2018 competency evaluations as well as Dr. Gould's report.

Dr. Scheving opined that Farago met the DSM-V criteria for a bipolar disorder, with psychotic features, and post-traumatic stress disorder with dissociative symptoms and delayed expressions. He concluded that her mental health diagnosis was related to the charged offenses and that her symptoms would respond to mental health treatment. He noted that Farago consented to mental health diversion and waived her right to a speedy trial. She "directly expressed a willingness to participate in mental health services in order to be accepted into the [m]ental [h]ealth [d]iversion program" and likewise "directly expressed a willingness to comply with mental health treatment as a condition of diversion." Dr. Scheving also found Farago mentally competent to consent to mental health diversion and said she did not pose an unreasonable risk to public safety if treated in the community.

Dr. Scheving agreed with Dr. Gould's previous recommendations for treatment and similarly recommended: that she participate in weekly individual mental health therapy sessions focused on emotional and behavioral symptoms management, that she be psychiatrically reevaluated to assure proper medication for her condition and to monitor for medication compliance, and that she participate in a substance use disorder evaluation to determine the appropriateness and level of treatment to address the contribution of cannabis use to the development of her manic and psychotic symptoms.

In December 2019, Farago filed a petition for mental health diversion. The petition stated that she had recently been diagnosed with a qualifying mental disorder and that a qualified mental health expert would opine that her mental health symptoms underlying the criminal behavior would respond to treatment. She also said that she

consented to mental health diversion, waived her right to a speedy trial, would comply with an appropriate treatment program, and did not pose an unreasonable risk to public safety. Defense counsel submitted Dr. Scheving's and Dr. Gould's reports in support of the petition.

The People opposed Farago's application for mental health diversion and submitted copies of the police and fire reports, Farago's medical records, a Behavioral Health crisis evaluation, legislative history materials, and information on cannabis-related disorders.

Farago's reply asserted that she had voluntarily participated in independent psychiatric and psychological evaluations since being arrested, was residing in Redding, and was participating in mental health treatment through Shasta County Health and Human Services. She reiterated that she consented to mental health diversion, would waive her right to a speedy trial, and would comply with an appropriate treatment program. She denied being a danger if treated in the community. She also attached copies of the relevant police reports as well as mental health records from Behavioral Health and a medical psychiatric assessment and treatment plan from Shasta County Health and Human Services.

The trial court referred Farago's petition to the mental health diversion team, and a hearing on the matter was continued several times to September 2020. At the September hearing, the court tentatively denied Farago's request for mental health diversion, but continued the matter for a further hearing the following month. The hearing was continued again to December 2020.

At the December hearing, the trial court explained that it needed more information from Farago regarding her proposed treatment plan, including her treatment providers and their commitment to communicating regularly with the court if located out of county, before it could determine whether she was appropriate for diversion. Farago failed to attend the continued hearing in February 2021, and defense counsel withdrew her petition

7

for mental health diversion. Over the next several months, Farago failed to appear at multiple court-ordered hearings, and the trial court issued a bench warrant for her arrest.

IV.

By August 2022, Farago was back in custody. At that time, her counsel declared a doubt as to her competency, and the trial court once again suspended criminal proceedings.

In September 2022, Farago refused to cooperate with competency evaluators, Dr. McKellar and Dr. Daisy Switzer. Farago told Dr. McKellar that she did not trust the mental health system, the mental health system and the judicial system were corrupt, and she " 'would rather stay in jail then [*sic*] be sent to a mental hospital.' " Given her lack of cooperation, Dr. McKellar was unable to reach a conclusion regarding competency.

Although Farago also was uncooperative with Dr. Switzer, she found that Farago was incompetent based on the "bizarre content of her speech" and manic behaviors exhibited during their attempted interview. In her opinion, Farago required treatment that Farago did not think she needed. Dr. Switzer believed that involuntary treatment with antipsychotic medication was appropriate to restore Farago to competency.

Farago subsequently agreed to cooperate, and Dr. Switzer and Dr. McKellar each reevaluated her. Dr. Switzer noted that Farago continued to present as disorganized and delusional and maintained bizarre accounts of her personal history, how she lost custody of her son, and the events leading to the present offenses. Although taking medication while in jail, Dr. Switzer opined that it was not controlling Farago's symptoms and that she remained psychotic and incompetent.

After re-examining her, Dr. McKellar found Farago competent. At that time, she did not exhibit signs of psychosis or impaired reality testing. She was cooperative with psychiatric treatment in the jail, was compliant with her medication regimen and jail routine, and demonstrated good reality testing since he had last attempted to interview

8

her. She apologized for her behavior during the prior evaluation and noted she was still " 'manicky' at the time."

Although Farago "verbalized an incomplete understanding of her mental illness," she was able to "internalize feedback that her presentation and history indicate[d] a primary diagnosis of [b]ipolar [d]isorder." She also verbalized "the concept that she needed to remain on her medication regimen" and expressed a desire to continue receiving psychiatric treatment/medication. She was hopeful that she would be found eligible for mental health diversion. After finding her competent, Dr. McKellar noted that Farago "requires continued treatment with psychotropic medication, and she is likely to comply with treatment on a voluntary basis."

In January 2023, the parties submitted on the reports and, after confirming with Farago that she was medication compliant, the trial court found her competent and reinstated criminal proceedings. During the hearing, the court commented that Farago was "an individual like many who decide to take medication that might assist them, [and] has greatly benefitted from the use of psychotropic medication." According to the court, Dr. McKellar's report, which was more recent than Dr. Switzer's, confirmed the court's own observations that Farago was responding well to the psychotropic medication. The court also noted that even Dr. Switzer's report documented a noticed improvement from Dr. Switzer's first attempt to interview Farago, which the court believed resulted from Farago taking medication. The court then urged Farago to continue seeing and "work[ing] with [her care provider] to make sure if [she] had any side effects or anything going on that he can adjust sometimes the medication dose or various things so you continue to do well." The court encouraged her "to continue to be medication compliant" because she would benefit from it. Farago said she "absolutely agree[d]."

Defense counsel waived time for a speedy trial, informed the trial court that he intended to file a new petition for mental health diversion, and asked that Behavioral Health perform another assessment of Farago while they worked on a stable treatment

9

and exit plan should the court find her eligible for mental health diversion. At the next hearing in February 2023, defense counsel stated that a mental health diversion petition was pending, and they were "working on getting residency established to meet the suitability prong. Once everything is in line[,] we'll make a petition and move to the informal process."

V.

In May 2023, Farago filed her second petition for mental health diversion. She executed a release for Sepna Nair, a licensed clinical counselor and a substance use disorder clinical care counselor at Behavioral Health, to review her medical records and assess her for possible diversion, which the People continued to oppose.

Nair interviewed Farago in August 2023. She diagnosed Farago with post-traumatic stress disorder with derealization. Nair opined that Farago's symptoms would respond to a treatment program that included attending psychiatric appointments, taking prescribed medication, and attending outpatient treatment as prescribed. Farago reported having stable housing with her uncle in Contra Costa County, who was her support system there. Nair recommended that Farago "seek services in Contra Costa County due to having prior services through them and having a safe place to stay" and that she "connect with behavioral health services through Contra [C]osta [C]ounty for medication and therapy services." Nair determined that Farago would benefit from case management services to navigate the mental health diversion program. Nair also noted that the recommended services were available in Siskiyou County, and she believed that Farago could be treated in the community if she agreed to comply with the terms of the plan.

At a hearing on August 10, 2023 regarding bail issues, defense counsel informed the trial court that Farago had "[taken] steps to move to Contra Costa County and she was living openly there" and had used that address to apply for medical coverage in Contra Costa County. When she applied for benefits in Contra Costa County, "[the county] actually did a warrant check on her and background check because there are things that

10

exclude you from eligibility." Counsel confirmed that she had "housing that's available to her in Contra Costa County." The court stated that it would issue a tentative ruling on the diversion petition the next day, "subject to an informal hearing."

On August 11, 2023, the trial court issued a written ruling tentatively denying Farago's second petition for mental health diversion. The court prefaced its ruling by noting that Farago "suffer[ed] from severe mental illness that most likely on set in her mid to late 30's." The court found that she clearly "was suffering severe effects of her mental illness before, during, and after the events that lead to her felony charges." Citing the initial 2018 competency reports as well as Dr. Gould's report, the court noted that each of the evaluators had found medication was necessary to treat Farago's mental illness. The court recognized that Dr. Gould and Nair made similar treatment recommendations that included taking prescribed medication and attending psychiatric and therapy appointments; Nair had also recommended that Farago seek services from Contra Costa County.

The trial court found that Farago "may very likely meet the qualifying requirements for mental health diversion," but it determined that she "may very likely be unsuitable for the program" because it "appear[ed] she may have a history of non-medication compliance." The court also found that "coupled with a desire to re-locate to Contra Costa County, it may prove to be too difficult, or impossible, to adequately monitor medication compliance, testing, and supervision of [Farago]."

At a hearing on August 15, 2023, the trial court noted that it had issued a tentative ruling on the diversion petition, but neither counsel had received copies of it, so the matter was continued until the following week. Defense counsel then filed a written objection to the court's tentative ruling, arguing that no evidence in the record supported the court's tentative findings as to "[m]edication non-compliance" or the difficulty in monitoring Farago's medication compliance.

11

At the continued hearing, the trial court noted defense counsel's written objection to the tentative ruling, explaining that it understood counsel to have filed the objection to preserve the issue for review. It did not entertain further discussion on the petition.

In February 2024, Farago pleaded no contest to arson (§ 451, subd. (b); count 1) with the use of an accelerant (§ 451.1, subd. (a)(5)) in exchange for dismissal of the remaining charges and an indicated sentence of five years, including the middle term of five years on the arson count with the punishment on the accelerant enhancement to be stricken at sentencing.

In March 2024, the trial court sentenced Farago to the middle term of five years for the arson conviction and struck the punishment on the accelerant enhancement. Farago timely appealed and eventually obtained a certificate of probable cause. The case was fully briefed in June 2025 and assigned to this panel the following month.

## DISCUSSION

### I.

Section 1001.36 authorizes pretrial mental health diversion for defendants with certain qualifying mental disorders. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147; § 1001.36, subds. (a) & (d).) Under section 1001.36, subdivision (b), a defendant is "eligible" for mental health diversion if the defendant has been diagnosed with a qualifying mental disorder and the disorder was "a significant factor in the commission of the charged offense." A defendant is "suitable" for diversion if: in the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder that caused, contributed to, or motivated the defendant's criminal behavior would respond to mental health treatment; the defendant consents to diversion and waives his or her speedy trial rights; the defendant agrees to comply with treatment as a condition of diversion; and the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (c)(1)-(4).) " 'Pretrial diversion' " under the statute "means the postponement of prosecution . . . to allow the

12

defendant to undergo mental health treatment" if the "court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i).)

We review a trial court's order denying mental health diversion for abuse of discretion and its factual findings for substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Id.* at p. 449.) We presume a trial court's order is correct and indulge all intendments and reasonable inferences to support it. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Absent evidence to the contrary, we presume a trial court knew and applied the law. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)

II.

In this case, the record shows that the trial court's ruling failed to apply the correct legal standards to Farago's diversion request. As noted above, after finding her eligible, the court denied diversion based on the determination that Farago "may very likely be unsuitable for the [diversion] program" because "[i]t appear[ed] she may have a history of non-medication compliance," which, "coupled with a desire to relocate" to a different county where she had family support, "may prove to be too difficult, or impossible, to adequately monitor medication compliance, testing, and supervision." This ruling rests on a legal error because it did not apply the four statutory suitability criteria found in section 1001.36, subdivision (c), which required the court to consider whether her symptoms would respond to mental health treatment; whether she consented to diversion and waived her speedy trial rights; whether she agreed to comply with treatment as a condition of diversion; and whether she would pose an unreasonable risk of danger to public safety. (See, e.g., *Grossmont Union High School Dist. v. Diego Plus Education*

13

*Corp.* (2023) 98 Cal.App.5th 552, 584 [trial court applied an incorrect legal standard when it did not apply one of the essential components for deciding whether fees should be awarded under the applicable fee statute].) And a trial court abuses its discretion when it applies the wrong legal standard. (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 449.)

The People acknowledge that the trial court did not expressly cite the suitability criteria set forth in section 1001.36, subdivision (c). They nevertheless urge us to read the court's ruling as encompassing implied findings that Farago's mental health symptoms would not respond to treatment (§ 1001.36, subd. (c)(1)) and that she failed to agree to comply with treatment as a condition of diversion (§ 1001.36, subd. (c)(3)). We are not persuaded.

It is true that we generally indulge reasonable inferences to support a trial court's order. (*People v. Giordano*, *supra*, 42 Cal.4th at p. 666.) But where a written order clearly expresses the legal and factual basis for a trial court's resolution of controverted issues, an appellate court will not imply findings the trial court did not make. (See, e.g., *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 ["When the record clearly demonstrates what the trial court did, we will not presume it did something different"]; *Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1015 [same].) Because the trial court here set forth its reasons for denying Farago's petition for mental health diversion, we will not presume the court denied the petition for other, unstated reasons.

Moreover, the trial court's actual findings are an ill fit with the statutory suitability factors. The People maintain that the court's concern about Farago's medication compliance equates to a finding under the first suitability factor that the symptoms of her mental illness would not "respond to mental health treatment." (§ 1001.36, subd. (c)(1).) But the former addresses compliance, while the latter relates to ineffectiveness, and nothing in the trial court's order suggests that it meant the two to be the same. Indeed, when the court considered two of the reports on which the People now rely

14

(Dr. McKellar's and Dr. Switzer's) at the second competency hearing, the court determined that Farago's mental health symptoms *were* responding well to the medication she was taking. The People also point to Nair's report as supporting an implied finding that Farago's symptoms would not respond to treatment, but that report expressly found the opposite.

The trial court's concern regarding medication non-compliance arguably aligns more closely with the third suitability factor, which asks whether a "defendant agrees to comply with treatment as a condition of diversion." (§ 1001.36, subd. (c)(3).) But even if we were to read the trial court's order as making an implied finding with respect to that factor, it was not supported by substantial evidence. Contrary to the court's statement in the tentative ruling that there were "no documents in the file that would suggest [Farago] ha[d] a history of medication compliance," the multiple psychiatric evaluations and assessments show that when she was given medication while incarcerated she took it, she acknowledged (to the trial court and the doctors) the importance of taking medication to control her symptoms, she agreed to abide by the recommended treatment plans, and she sought outpatient treatment on her own while released from custody. In November 2019, she expressly told Dr. Scheving that she was willing to participate in mental health services in order to be accepted into the mental health diversion program and that she would comply with mental health treatment as a condition of diversion. Both of Farago's petitions for mental health diversion stated she would comply with an appropriate treatment program. And in response to the People's opposition to diversion, Farago again affirmed that she would comply with treatment.

The People concede that the record contains some evidence that Farago agreed to comply with treatment requirements. They point to three pieces of evidence as support for a contrary finding, but none is sufficient. First, they note that, in July 2018 when Farago was first arrested and incarcerated, she said that she did not see anything wrong with her and did not think she needed any type of medication. That statement was made

15

a full five years before the trial court considered her 2023 diversion petition; it was also before she had been formally diagnosed and before her providers developed her diversion treatment plan.  Second, the People note that, in September 2022, Farago told Dr. McKeller, " 'I would rather stay in jail then [*sic*] be sent to a mental hospital" and expressed her belief that the judicial and mental health systems were corrupt.  These statements do not demonstrate a refusal to comply with the treatment program.  None of the doctors who evaluated Farago urged inpatient treatment.  And a negative opinion about courts and the health care system does not equate to a refusal to undergo treatment to obtain the benefit of diversion.  Third, the People argue that Farago failed to show that she agreed to comply with the recommended treatment plan.  This is not correct.  Her filings in the trial court expressly stated that she would.

Finally, the People maintain that any error by the trial court in failing to make the requisite suitability findings was harmless, because the trial court impliedly found that Farago had failed to satisfy the requirement that "the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant."  (§ 1001.36, subd. (f)(1)(A)(i).)  We disagree.  The court's written tentative ruling acknowledged the treatment plans recommended by Dr. Gould and Nair, including therapy and psychiatric medication, but it did not say they would not meet Farago's specialized needs.  The court noted that Farago's apparent "desire to re-locate to Contra Costa County" coupled with the possible history of medication non-compliance meant that it "may prove too difficult, or impossible" to monitor Farago's medication compliance, testing, and supervision.  But Nair's report noted that Farago had previously obtained services in Contra Costa County and suggested that medication and therapy services were available there.  Moreover, as we have determined, the evidence cited by the People does not suffice to support a finding that Farago would be unable to comply with medication recommendations.  We thus decline

16

the People's invitation to imply a finding under section 1001.36, subdivision (f)(1)(A)(i) that would render the court's error in applying section 1001.36, subdivision (c) harmless.

Because the trial court failed to apply the correct legal standard, its denial of Farago's diversion petition reflects an abuse of discretion. In light of this disposition, we need not address the People's argument that the abstract of judgment contains various clerical errors. On remand, the parties may bring that matter to the trial court's attention if and as appropriate.

## DISPOSITION

Farago's no contest plea is conditionally vacated, and the judgment is conditionally reversed. The matter is remanded to the trial court to conduct new proceedings on Farago's petition for mental health diversion in accordance with section 1001.36 and consistent with this opinion. If the trial court grants Farago's motion for mental health diversion, the no contest plea is vacated and the judgment is reversed. If the trial court again denies mental health diversion, Farago's no contest plea and the judgment shall be reinstated.

_____/s/_____
FEINBERG, J.

We concur:

\_\_\_\_\_/s/_____
DUARTE, Acting P. J.

\_\_\_\_\_/s/_____
RENNER, J.

17